779 N.W.2d 589 (2010)
279 Neb. 593
Gerald JACKSON, appellee,
v.
BROTHERHOOD'S RELIEF AND COMPENSATION FUND, appellant.
No. S-09-812.
Supreme Court of Nebraska.
March 19, 2010.
*590 Renee Eveland, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., Lincoln, for appellant.
Andrew W. Snyder and Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, L.L.C., Scottsbluff, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
This is the second time this case has been before us.[1] It remains a case about an alleged breach of contract. Gerald Jackson, a railroad employee, sued Brotherhood's Relief and Compensation Fund (the Fund), alleging that the Fund breached its member agreement to pay him "`Held Out of Service'" benefits in the event he was suspended by his employer. The district court found in favor of Jackson. The primary issue presented in this appeal is whether Jackson is entitled to "held out of service" benefits pursuant to the member agreement. We conclude as a matter of law that Jackson is not entitled to benefits, and we reverse the judgment of the district court and remand with directions to dismiss Jackson's complaint.

BACKGROUND
Jackson was employed as an engineer at Burlington Northern Santa Fe Railway (BNSF). On January 2, 2003, Jackson *591 reported to work and was asked to submit to a random drug test. The drug test required both a breath test and a urine sample. Jackson performed the breath test but did not provide a urine sample. Jackson testified that if he had been able to give a sample, he would have done so.
Karen Donker, who was hired by BNSF to perform the drug test, testified that over a 3-hour timespan, she asked Jackson three to five times to urinate. Jackson never went into the rest-room or attempted to urinate. Jackson testified that he urinated 5 minutes before he went to work and did not "have the urge to go." Donker testified that at the end of the 3-hour waiting period, Jackson told her "no, he was not going to go." Jackson said that he ate a large meal before coming to work and refused to drink any liquid because he would suffer indigestion and heartburn. Jackson also testified that in the week before the drug test, he had been ill with flu-like symptoms, dehydration, and diarrhea. A week after the drug test, Jackson was diagnosed with prostatitis, a bacterial infection of the prostate gland that (according to Jackson) can be a "contributing factor" to an inability to urinate.
Because Jackson did not provide a urine sample, he was suspended by BNSF and a formal investigation was initiated by the railway. Following the formal investigation, Jackson was "held out of service" for 9 months for refusal to provide a urine specimen, in violation of the BNSF alcohol and drug policy.
At the time Jackson was suspended, he was a member of the Fund in "good and regular" standing. The Fund provides its members "held out of service" benefits, an accidental death and dismemberment insurance policy, and the potential of small retirement benefits, in consideration for the payment of dues. The Fund bases its determination of benefits eligibility upon the results of the grievance process provided under the member's collective bargaining agreement. The terms of the agreement between the Fund and a member are contained in the Fund's "constitution," which governs the claims process.
In accordance with the constitution, Jackson timely submitted a claim to the Fund for benefits, along with the transcript and exhibits from the BNSF investigative hearing. The Fund denied Jackson's claim in a written letter, stating: "After closely studying the facts submitted in your claim, we regret to advise you that it cannot be approved since it does not come within the provisions of the Constitution. We refer you specifically to Article XII, Sec. 4 and Article XXXIII, Sec. 1-a." (Emphasis in original.) Section 4 of article XII states in relevant part: "Member shall not be eligible for any benefits or compensation whatsoever for `Held Out of Service', as hereinafter defined, where such claim is based in whole or in part upon . . . failure to take training or to take or pass any examination . . . required by the employer. . . ." Section 1-a of article XXXIII of the constitution defines the term "held out of service" as follows:
"Held Out of Service", as used in this Constitution, shall include all cases where an employee of the Motive Power or Transportation Department has been entirely and permanently, or temporarily, relieved by his employer from the performance of his said usual duties after formal investigation, at which said employee was properly represented by a representative of the local grievance committee or other employee, as discipline for an offense or offenses, not, however, because of any willful or intentional violation or infraction of any order or orders, rule or rules, regulation or regulations, expressed or implied, of his employer, or of any violation or *592 infraction of any Federal or State Law now in force or hereafter enacted.

(Emphasis supplied.)
After his claim was denied, Jackson filed a complaint against the Fund in the district court. He alleged that the Fund had breached its contract with him by failing to compensate him while he was suspended. Jackson sought damages and attorney fees and costs. Following the initial trial, a jury found in favor of Jackson and awarded him $53,010, the amount of damages to which the parties had stipulated. The district court also sustained Jackson's motion for attorney fees and costs. The Fund appealed, and we transferred the appeal to our docket. On appeal, we held that the district court erred in admitting certain exhibits into evidence, and we vacated the jury's verdict and the judgment entered against the Fund.[2] The case was remanded for a new trial.
A bench trial was held on remand, and the district court found that Jackson's failure to give a urine sample was not willful or intentional and that he was entitled to $53,010 as damages for being held out of service. The court awarded Jackson attorney fees and costs and denied the Fund's motions to dismiss and for a new trial. The Fund appeals.

ASSIGNMENTS OF ERROR
The Fund assigns, consolidated and restated, that the district court erred in (1) finding Jackson was entitled to benefits under the constitution, (2) using an improper standard of review, and (3) awarding attorney fees and costs.

STANDARD OF REVIEW
The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[3]

ANALYSIS
The primary issue presented in this appeal is whether Jackson was entitled to benefits pursuant to the Fund's constitution. The Fund argues that Jackson is not entitled to benefits under the plain language of the constitution, because he refused to take a federally required drug test by not providing a urine sample. First, the Fund argues, proof that Jackson's conduct was willful or intentional is unnecessary because under article XII of the constitution, a failure to provide a urine sample is a sufficient basis for the denial of benefits. Second, the Fund asserts that under article XXXIII, Jackson willfully or intentionally violated an order, rule, or regulation of his employer. Because, as explained below, we conclude that the denial of benefits was warranted by article XXXIII, we need not address whether the urine test was an "examination. . . required by the employer" within the meaning of article XII.
As noted above, article XXXIII defines "held out of service" as having been "relieved by his employer from the performance of his said usual duties after formal investigation," but excludes a suspension based on "any willful or intentional violation or infraction of any order or orders, rule or rules, regulation or regulations, expressed or implied, of his employer, or of any violation or infraction of any Federal or State Law now in force or hereafter enacted." We have no difficulty in concluding that a "refusal" to provide a urine sample required by federal law is a willful or intentional violation or infraction within *593 the meaning of article XXXIII. And based on our review of the record, there is little doubt that Jackson intentionally refused to provide a urine specimen for a random drug test, in violation of the federal regulations we will explain in more detail below.
It is undisputed that Jackson was required by BNSFand federal lawto submit to a random drug test requiring both a breath and a urine specimen. And it is also undisputed that Jackson did not give, or even try to give, a urine sample. Following his refusal to provide a urine sample at the random drug test, BNSF sent a letter to Jackson informing him that he was suspended because he violated the BNSF policy on drug and alcohol use. The letter also stated that the suspension was "in accordance with 49 CFR Part 219.107," which provides that "[a]n employee who refuses to provide breath or a body fluid specimen or specimens when required to by the railroad under a mandatory provision of this part must be deemed disqualified for a period of nine (9) months."[4]
In 1991, Congress passed the Omnibus Transportation Employee Testing Act of 1991,[5] amending the Federal Railway Safety Act of 1970 to require drug testing of railroad workers in safety-sensitive positions.[6] Federal Railroad Administration regulations, as amended, establish minimum federal safety requirements for the control of alcohol and drug use in railroad operations.[7] Those regulations establish when testing is required, who is to be tested, and the actions which must be taken when an employee passes or fails a required test.[8] In addition, the Department of Transportation (DOT) promulgated regulations which support Federal Railroad Administration testing, essentially providing the technical, scientific, and medical detail on how Federal Railroad Administration drug and alcohol specimens are to be collected, analyzed, reviewed, and reported.[9] Drug testing procedures must comply with the scientific and technical procedures set forth in those regulations.[10]
The Fund points out that Jackson was deemed, as a matter of federal law, to have "refused" the test under 49 C.F.R. § 40.191(a), which lists 11 examples of what constitutes a refusal to take a drug test. In particular, § 40.191(a)(3) states, in pertinent part, that an employee has refused to take a drug test if he or she "[f]ail[s] to provide a urine specimen for any drug test required by this part or DOT agency regulations. . . ." The Fund argues that a refusal to provide a urine specimen is a willful or intentional act within the meaning of article XXXIII. We agree.
In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.[11] But in this case, the facts are undisputed. Jackson was required by his employer and federal law to submit to a random drug test which required both a breath and a urine specimen. Jackson failed to provide *594 a urine specimenin fact, he did not even try over the course of 3 hours. He has therefore willfully refused to submit to a drug test within the meaning of DOT regulations. And because Jackson refused to submit to the drug test, he is not permitted to receive "held out of service" benefits under the terms of the constitution.
Even if we consider Jackson's purported medical inability to urinate, the evidence he submitted on that point was insufficient as a matter of law. Under DOT regulations, a medical excuse is permitted only if subsection 49 C.F.R. § 40.191(a)(5) is satisfied. That subsection states that an employee has refused to take a drug test if he or she "[f]ail[s] to provide a sufficient amount of urine when directed, and it has been determined, through a required medical evaluation, that there was no adequate medical explanation for the failure (see § 40.193(d)(2))." Under § 40.193, an employee who fails to provide a sufficient sample is urged to drink 40 ounces of fluid during a period of up to 3 hours or until a sufficient sample is produced.[12] At that point, if an insufficient sample is again provided, there are medical interventions, including consulting the medical review officer and directing the employee to obtain an evaluation from a licensed physician, acceptable to the review officer, who has expertise in the medical issues raised by the employee's failure to provide a sufficient specimen.[13]
In this case, although the record is not completely clear on the point, it appears that Donker followed the insufficient-sample procedure despite Jackson's unwillingness to try to produce a specimen, because she waited for 3 hours and urged him to drink liquids. But a referral physician conducting an examination pursuant to § 40.193(d) is asked to determine either that "[a] medical condition has, or with a high degree of probability could have, precluded the employee from providing a sufficient amount of urine"[14] or that "[t]here is not an adequate basis for determining that a medical condition has, or with a high degree of probability could have, precluded the employee from providing a sufficient amount of urine."[15] And in this case, although evidence at trial indicates that Jackson had been diagnosed with prostatitis a week after the attempted test, no evidence sufficiently established a causal connection between this condition and Jackson's failure to provide a urine sample for the BNSF drug test.
The office notes of Dr. Robert Graves, a urologist, were in evidence. He examined Jackson and diagnosed him with prostatitis a week after the BNSF drug test, but the notes do not state that prostatitis caused (or could have caused) Jackson to be incapable of providing a urine sample. In fact, in a letter to Jackson dated January 23, 2003, and forwarded to a medical review officer for BNSF, Graves said he was unable to "give a medical explanation for [Jackson's] inability to give a urine specimen during the three-hour period" on January 2. Graves wrote that "the inability to give the urine specimen would be more related to dehydration rather than from the prostatitis itself," and he encouraged Jackson to "drink several glasses of water" the next time he was required to provide his employer a urine sample. This opinion was obviously insufficient to meet the standards set forth by § 40.193(d)(1) for excusing a failure to provide a urine sample. And an unsupported assertion of dehydration *595 is specifically excluded as a medical condition that can excuse the failure to provide a sufficient sample.[16] Even if Jackson's medical evidence is considered, under the standards established in the Code of Federal Regulations, Jackson still "refused," as a matter of law, to comply with BNSF and federal regulations requiring drug testing.
Considering the undisputed facts in this case, we conclude that the Fund is not required to pay Jackson "held out of service" benefits. The district court erred in finding otherwise. The Fund also argues that the district court erred in using an improper standard of review, because under the constitution, "[w]hen the cause for discipline in the employer's official notification is excluded from benefits hereunder, no benefits or compensation shall be paid by the Organization, even though it may appear such discipline was erroneously assessed, and the member's redress for such discipline shall be against the employer." The Fund argues that under this provision, if Jackson was erroneously found to have refused a drug test, his remedy was against BNSF, not the Fund.[17] Given our resolution of the first assignment of error, however, we need not address this assignment of error.
And the award of attorney fees and costs to Jackson was based upon his obtaining a judgment against the Fund. Because we have concluded that the court erred in finding that Jackson was entitled to benefits under the constitution, we also conclude Jackson was not entitled to attorney fees and costs.
Finally, we note, as an aside, Jackson's argument that the Fund's position is barred by a pretrial stipulation. The parties stipulated that Jackson "was `held out of service' from performing his regular duty for a period of nine months by his employer." On appeal, Jackson argues that this means the Fund stipulated that Jackson fell within the constitution's definition of "held out of service," which excludes willful or intentional violations of orders, rules, or regulations. But the construction of a stipulation is a question of law,[18] and it is clear from the record that no one understood this stipulation to be, in effect, an abandonment of the Fund's case. Rather, the stipulation simply meant there was no dispute that Jackson had been suspended. In any event, whether the undisputed facts fell within the contractual definition of "held out of service" depends on the meaning of the constitution, which is a question of law.[19] And parties have no right to stipulate as to matters of law; such a stipulation, if made, will be disregarded.[20] We find no merit to Jackson's argument.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the district court and remand the cause with directions to dismiss Jackson's complaint.
REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.
NOTES
[1] See Jackson v. Brotherhood's Relief & Comp. Fund, 273 Neb. 1013, 734 N.W.2d 739 (2007).
[2] Id.
[3] Builders Supply Co. v. Czerwinski, 275 Neb. 622, 748 N.W.2d 645 (2008).
[4] 49 C.F.R. § 219.107(a) (2009).
[5] Omnibus Transportation Employee Testing Act of 1991, Pub. L. No. 102-143, 105 Stat. 952 (codified at 49 U.S.C. § 20140 (2006)).
[6] See id.
[7] See 49 C.F.R. part 219.
[8] See id.
[9] See 49 C.F.R. part 40 (2009).
[10] See 49 C.F.R. § 382.105 (2009).
[11] Anderson Excavating v. SID No. 177, 265 Neb. 61, 654 N.W.2d 376 (2002).
[12] § 40.193(b)(2).
[13] § 40.193(c).
[14] § 40.193(d)(1).
[15] § 40.193(d)(2).
[16] See § 40.193(e).
[17] See, e.g., Brandt v. Brotherhood's Relief and Compensation Fund, No. 07 C 2204, 2008 WL 4899630 (N.D.Ill. Nov. 12, 2008).
[18] Foote v. O'Neill Packing, 262 Neb. 467, 632 N.W.2d 313 (2001).
[19] See Builders Supply Co., supra note 3.
[20] City of Omaha Human Relations Dept. v. City Wide Rock & Exc. Co., 201 Neb. 405, 268 N.W.2d 98 (1978).